IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| MICHELE ZANDER,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No. 8:09-cv-02649-AW |

**MEMORANDUM OPINION**

Plaintiff Michele Zander brings this action against Defendant United States of America. Mrs. Zander asserts a claim of medical malpractice under the Federal Tort Claims Act. Presently pending before the Court is the United States' Motion to Dismiss or for Summary Judgment ("Motion to Dismiss"). The Court has reviewed the entire record and finds no hearing necessary. For the reasons that follow, the Court **GRANTS** Defendant's Motion to Dismiss.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The Court extracts the bulk of the following facts from the Memorandum Opinion it issued on February 2, 2011 ("Feb. 2 Opinion"). Mem. Op. 1–3, Doc. No. 26; *Zander v. United States*, 786 F. Supp.2d 880, 881–83 (2011). The instant case arises from a series of events that Mrs. Zander alleges caused her temporary paralysis and permanent physical limitation. In August 1997, Mrs. Zander began to experience pain in her lower back and numbness in her legs. She sought treatment at the Family Practice Clinic at Maxwell Air Force Base ("Maxwell AFB") in Alabama, where she was referred to physical therapy. Despite this measure, Mrs. Zander continued to experience chronic weakness and pain. Therefore, she returned to the Maxwell AFB

1

Clinic and was prescribed pain medication in a bid to alleviate her symptoms. This treatment also bore little fruit. Mrs. Zander's X-rays came back negative and medical personnel had no explanation for her symptoms. Accordingly, Mrs. Zander requested and received a referral to an orthopedist at Maxwell AFB.

In September 1997, medical personnel took an MRI of Mrs. Zander's upper body. The MRI disclosed a defect known as an arteriovenous malformation ("AVM") in her spine. Mrs. Zander alleges that she was not made aware of the AVM and that she did not receive treatment for this condition. Mrs. Zander also alleges that she was not advised to limit her activities, seek further consultation, undergo surgery, or otherwise take any remedial action. Further, Mrs. Zander avers that the physician at Maxwell AFB informed her that she had two bulges in her back, but not that she had a herniated disc. Additionally, Mrs. Zander contends that the physician told her that it was normal to experience back pain at times.

Over the next three years, Mrs. Zander continued to receive treatment at Maxwell AFB for her chronic pain. Mrs. Zander maintains that her healthcare providers at Maxwell AFB repeatedly advised her that she had no serious problem. Consequently, Mrs. Zander contends, she continued her active lifestyle oblivious to her lurking health hazard.

By 2002, Mrs. Zander and her husband had relocated to the Washington, D.C. area, where the clinics at National Naval Medical Center (NNMC) in Bethesda assumed her care. In the last week of November 2002, the events precipitating the injury of which Mrs. Zander complains took place. On November 24, 2002, after using a leaf vacuum for several hours, Mrs. Zander began to experience back and leg pain. By November 26, 2002, Mrs. Zander's symptoms had grown worse. The next morning, Mrs. Zander repaired to the emergency room at NNMC, where personnel administered an injection and oral medication to temporarily relieve her pain.

On November 29, 2002, Mrs. Zander returned to the clinic at NNMC and received more pain medication. Mrs. Zander was sent home with instructions to return for an MRI if the numbness intensified. At 5:30 that afternoon, Mrs. Zander returned to the emergency room at NNMC. Allegedly, in the face of efforts to discharge her, Mrs. Zander persuaded medical personnel for an additional opinion and MRI.

On November 30, 2002, Mrs. Zander was admitted to the hospital at NNMC. At 2:00 a.m. or thereabouts, medical personnel conducted an MRI. According to Mrs. Zander, medical personnel reviewed the earlier MRI conducted at Maxwell AFB and noted the presence of AVM. By this time, Mrs. Zander had started to feel numbness in her posterior and to experience difficulty with urination and bowel movements. Mrs. Zander underwent a procedure known as an angiogram with embolization of the spinal cord AVM. Not long thereafter, weakness beset Mrs. Zander's lower body. Despite the additional efforts of medical personnel, Mrs. Zander's lower body became paralyzed. Mrs. Zander acknowledges that, through a corrective surgery carried out in Canada, her symptoms have improved to the point that she can move both legs and walk with a walker. Mrs. Zander asserts, however, that her physical limitations and inability to walk without assistance are permanent.

Pursuant to the Federal Tort Claims Act ("FTCA"), Mrs. Zander filed an administrative tort claim in late November 2004, nearly two years to the day after her injury. Andrea Bennett represented Mrs. Zander at this time. *See* Doc. No. 34-2. Ms. Bennett was affiliated with the firm Gray & Gilliland, P.C., whose address she used in her correspondence with the United States. *See id.* Gray & Gilliland's address was 750 Hammond Drive Building 12, Suite 200, Atlanta, GA 30328. *Id.* On May 3, 2005, during the administrative review process, Ms. Bennett notified the

United States that she had gone to the firm Gilliland, Ratz & Browning, P.C., whose address was 1455 Lincoln Parkway Suite 300, Atlanta, GA 30346. *See* Doc. No. 34-4.

On October 12, 2006, the United States notified Mrs. Zander that its investigation had uncovered no actionable malpractice and invited her to submit additional medical evidence substantiating her claim. Doc. No. 34-5. The United States sent this notice to the Lincoln Parkway address. *See id.* Mrs. Zander accepted this invitation and, after the United States completed its supplemental review, it issued a notice of final denial on February 22, 2008. *See* Doc. No. 34-6. The United States sent this notice, like the original, to Ms. Bennett's Lincoln Parkway address. *See id.*

On July 18, 2008, Ms. Bennett requested reconsideration of the United States' denial. Doc. 34-7. In this letter, which was sent from the Lincoln Parkway address, Ms. Bennett asked the United States to provide her with Mrs. Zander's medical records. *Id.* On July 30, 2008, the United States sent a letter to Ms. Bennett at the Lincoln Parkway address stating that it was willing to consider additional medical reports before taking further action on her claim. *See* Doc. No. 34-8. The July 30 mailing included the medical records that Ms. Bennett requested on July 18. *See id.*

On March 16, 2009, via certified mail, the United States sent a notice of final denial of Mrs. Zander's claim to the Lincoln Parkway address. Doc. No. 34-10. Someone at the Lincoln Parkway address signed for and received the letter. *Id.* The letter was marked "return to sender" and received hand-written instructions to forward it to a different address. Doc. No. 34-11. On April 8, 2009, the Government resent the denial letter to the forwarding address. Doc. No. 34-12 at 2.

4

On October 8, 2009, six months to the day after the United States resent the denial letter, Mrs. Zander filed a Complaint against the United States. Compl., Doc. No. 1. On April 14, 2010, the United States moved to dismiss on the ground that Mrs. Zander filed her malpractice claim outside Maryland's statute of repose. Doc. No. 13. In its Feb. 2 Opinion, the Court rejected this argument, holding that FTCA's "deemed denied" provision preempts Maryland's statute of repose. *See Zander*, 786 F. Supp.2d at 886–87. Although the Court's Feb. 2 Opinion treated with limitations issues, the United States did not raise the related argument it raises herein: whether Mrs. Zander's purported failure to file suit within FTCA's six-month statute of limitations time-bars her claim.

On June 24, 2011, the United States filed the instant Motion to Dismiss. Mot. Dismiss, Doc. No. 34. The United States urges the Court to dismiss Mrs. Zander's claim on two grounds: (1) Mrs. Zander failed to satisfy the preconditions to suit of Maryland's Health Care Malpractice Claims Act ("HCMCA"); and (2) Mrs. Zander filed suit outside of FTCA's six-month statute of limitations. Both grounds are meritorious.

## II.   STANDARD OF REVIEW

As a threshold matter, the Court must ascertain the appropriate standard of review. The Government first argues that Mrs. Zander's failure to comply with HCMCA serves as a basis for dismissal. HCMCA sets forth several prefiling requirements that plaintiffs must satisfy before they may assert medical malpractice claims. *See infra* Part III.A. A few authorities propose that courts properly analyze whether the failure to comply with such requirements warrants dismissal under Rule 12(b)(6). *See Renn v. Bd. of Comm'rs of Charles Cnty., Md.*, 352 F. Supp.2d 599, 602 (D. Md. 2005) (citation omitted) ("a prefiling requirement is most appropriately analyzed under Rule 12(b)(6) . . . rather than as a lack of subject matter jurisdiction under Rule 12(b)(1)");

*cf. Oxtoby v. McGowan*, 447 A.2d 860, 864–65 (Md. 1982) (holding that a plaintiff's failure to satisfy HCMCA's preconditions does not deprive trial courts of subject matter jurisdiction to hear and decide claims coming within the Act's purview).

The weight of the authority, however, indicates that courts properly analyze such arguments under Rule 12(b)(1). *See Kerns v. United States*, 585 F.3d 187, 194 (4th Cir. 2009) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)) (indicating that FTCA's dictate that the United States may incur tort liability only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" is jurisdictional); *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995)) (stating that "an assertion of governmental immunity is properly addressed under the provisions of Rule 12(b)(1)"); *cf. Jones v. Bagalkotakar*, 750 F. Supp.2d 574, 582 (D. Md. 2010) (stating that it was improper to dismiss a medical malpractice claim under Rule 12(b)(1) for lack of subject matter jurisdiction in that the plaintiffs fulfilled the HCMCA precondition at issue).

The decision to apply 12(b)(1) rather than 12(b)(6) as to the United States' first argument makes little practical difference. "There are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* Here, similarly, the United States contends that Mrs. Zander has failed to allege that she complied with HCMCA. In such a case, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the

same procedural protection as he would receive under a Rule 12(b)(6) consideration."[1] *Id.*; *accord*, *Kerns*, 585 F.3d at 192.

Secondly, the United States contends that Mrs. Zander filed suit outside of FTCA's six-month statute of limitations. *See* 28 U.S.C. § 2401(b). Although the Supreme Court has yet to weigh in on the matter, the overwhelming weight of authority proposes that § 2401(b) is jurisdictional. *See, e.g.*, *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994); *Hahn v. United States*, 313 Fed. App'x 582, 586 (4th Cir. 2008); *McKewin ex rel. Harrell v. United States*, No. 92-1770, 1993 WL 389568, at *1 (4th Cir. Oct. 4, 1993) (citing cases). Thus, the Court analyzes the United States' § 2401(b) argument under the standard of review for 12(b)(1) motions.

The manner in which the Court applies 12(b)(1) to the United States' limitations argument varies from the manner in which it applies 12(b)(1) to the United States' HCMCA argument. The United States maintains that March 16, 2009 is the date on which it mailed Mrs. Zander notice of final denial of her administrative claim within the meaning of § 2401(b). If this is true, § 2401(b) time-bars Mrs. Zander's claim because she waited to file suit until October 8, 2009. The United States relies on matter extraneous to the Complaint to fortify this argument.

"[I]f the governmental entity challenges jurisdiction under Rule 12(b)(1) . . . the court is free to consider exhibits outside the pleadings 'to resolve factual disputes concerning jurisdiction.'" *Smith*, 290 F.3d at 205 (quoting *Williams*, 50 F.3d at 304). In other words, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williams*, 50 F.3d at 304 (citation and internal quotation marks omitted). These authorities are consistent with the Supreme Court's obiter dictum that "if subject-matter

---

[1] In the interest of brevity, the Court passes on setting forth the standard of review for Rule 12(b)(6) motions. Suffice it to say that, in the aftermath of *Twombly* and *Iqbal*, the complaint must state a claim to relief that is plausible on its face.

7

jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citations omitted). In some cases, it may behoove the trial court to conduct an evidentiary hearing to resolve the disputed facts that underpin subject matter jurisdiction. *See Kerns*, 585 F.3d at 193; *Adams*, 697 F.2d at 1219. Such a measure is unnecessary here because the Parties do not contest the facts relevant to the Court's analysis.

### III.   LEGAL ANALYSIS

#### A.   The Propriety of Dismissal for Failure to Comply with the Health Care Malpractice Claims Act

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "The FTCA effects a limited waiver of the United States' sovereign immunity for 'personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Id.* at 651 (citing 28 U.S.C. § 1346(b)(1)). In other words, FTCA generally waives the United States' sovereign immunity with respect to common law torts that federal employees commit while acting within the scope of employment. *See id.*; *Jamison v. Wiley*, 14 F.3d 222, 226 n.1 (4th Cir. 1994) (citation omitted).

As a limited waiver of sovereign immunity, FTCA's terms circumscribe the authority of federal courts to entertain suits against the United States. The United States' waiver of sovereign immunity applies only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Therefore, federal courts must apply "the substantive law of the state where the alleged tort took place" to determine the extent to which, if any, the United

States is liable in tort. *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009). Furthermore, FTCA authorizes tort liability against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

Under Maryland law, a plaintiff in a medical malpractice action must comply with the requirements of the Health Care Malpractice Claims Act. *See* Md. Code Ann., Cts. and Jud. Proc. §§ 3-2A-01 *et seq.* HCMCA mandates that a medical malpractice suit "may not be brought or pursued in any court of this State except in accordance with [the statute]." *Id.* § 3-2A-02(a)(2). HCMCA requires plaintiffs to satisfy several preconditions before bringing a medical malpractice action. *See id.* §§ 3-2A-01 *et seq*. One precondition requires plaintiffs to file with the Director of the Health Care Alternative Dispute Resolution Office ("HCADRO") "a certificate of a qualified expert . . . attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." *Id.* § 3-2A-04(b)(1)(i). Plaintiffs also must avail themselves of HCADRO's arbitration procedure. *See id.* § 3-2A-04; *Rowland v. Patterson*, 882 F.2d 97, 97 (4th Cir. 1989). Although plaintiffs may waive arbitration in certain circumstances, this option is unavailable to plaintiffs who fail to file the certificate of qualified expert. *See* Md. Code Ann., Cts. and Jud. Proc. § 3-2A-06B(b)(1)(i). Ordinarily, courts must dismiss, without prejudice, an action in which the plaintiff has failed to file the certificate of qualified expert. *See id.*; *McCready Mem'l Hosp. v. Hauser*, 624 A.2d 1249, 1251 (Md. 1993).

The United States moves this Court to dismiss Mrs. Zander's suit for failure to plead compliance with HCMCA's prerequisites, as well as failing to comply with them in fact. Mrs. Zander concedes the truth of these charges on brief. *See* Pl.'s Opp. Def.'s Mot. Dismiss 9–11, Doc. No. 36.

Notwithstanding these failures, Mrs. Zander contends that the Court would improperly dismiss her malpractice claim for two reasons. First, Mrs. Zander asserts that the pertinent HCMCA provisions are procedural rather than substantive. Alternately, Mrs. Zander maintains that the Court must stay the case pending resolution of the parallel arbitration process if it sanctions dismissal without prejudice. The first argument is incorrect. The Court need not consider her alternative argument because, even if this case's circumstances counseled for a stay, Mrs. Zander's suit is still time-barred.

The Court disagrees with the proposition that HCMCA regulates procedure rather than substance. Concededly, HCMCA's plain language lends support to Mrs. Zander's position. *See* Md. Code Ann., Cts. and Jud. Proc. § 3-2A-10 (emphasis added) (providing that "the provisions of this [statute] shall be deemed **procedural** in nature"). Notwithstanding this clear language, a line of authority advances the notion that HCMCA is substantive in nature. *See, e.g.*, *Rowland*, 882 F.2d at 99. Relying on *Rowland*, the Court of Appeals of Maryland has declared that HCMCA is "substantive rather than procedural" for the purposes of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *Lewis v. Waletzky*, 31 A.3d 123, 130 n.9 (Md. 2011).

Granted, this case is before the Court under federal question jurisdiction, not under diversity jurisdiction as in *Erie*. But this distinction is insignificant in the context of this case. The underlying cause of action is medical malpractice, which is a garden-variety tort claim. FTCA comes into play only because Mrs. Zander has sued the United States on a respondeat superior theory and the United States has limitedly waived sovereign immunity. For these reasons, this case comprehends some of the policy considerations that are present in the *Erie* context. Plaintiffs who sue private physicians for medical malpractice in Maryland circuit courts must comply with HCMCA's preconditions. Arguably, then, it would be anomalous if plaintiffs

10

who sued United States physicians in the District of Maryland faced no such preconditions. FTCA seems to recognize this concern in prescribing that "[t]he United States shall be liable [under FTCA] in the same manner and to the same extent as a private individual under like circumstances." *See* 28 U.S.C. § 2674(b)(1). Therefore, the *Lewis* court's gloss—that HCMCA is substantive rather than procedural—on *Rowland* applies in this case. Accordingly, HCMCA's preconditions to suit are substantive and Mrs. Zander's failure to comply with them vitiates her claim.[2]

## B. The Propriety of Dismissal for Failure to Comply with the Federal Tort Claims Act's Six-Month Statute of Limitations

The United States posits that Mrs. Zander filed her suit outside of FTCA's six-month statute of limitations. FTCA's limitations provision provides as follows:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun **within six months after the date of mailing**, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (emphasis added).

The United States concedes that Mrs. Zander filed an administrative tort claim within two years after the claim accrued. Nevertheless, the United States asserts that Mrs. Zander failed to begin this action "within six months after the date of mailing . . . of notice of final denial of the

---

[2] Assuming *arguendo* that FTCA did not time-bar Mrs. Zander's action, the Court agrees with Mrs. Zander that this case would make a good candidate for a stay despite her failure to comply with HCMCA's preconditions. Courts have discretion to stay cases in which plaintiffs fail to comply with HCMCA's preconditions to avoid creating a statute of limitations bar. *See Jewell v. Malamet*, 587 A.2d 474, 481 (Md. 1991). Furthermore, in this district, Judge Blake has stayed a case in which the plaintiff failed to follow HCMCA's preconditions. *Anderson v. United States*, Civil No. CCB-08-3, 2008 WL 3307137, at *4 (D. Md. Aug. 8, 2008).

claim." *Id.*[3] The United States asserts that March 16, 2009 is the "date of mailing" within the meaning of § 2401(b). If so, then Mrs. Zander would have had to have filed suit by September 16, 2009. *See Tribue v. United States*, 826 F.2d 633, 635 (7th Cir. 1987) (citations omitted) (calculating the six-month limitations period "from the day after mailing to the day before the same calendar date six months later"); *Vernell ex rel. Vernell v. U.S. Postal Serv.*, 819 F.2d 108, 111 (5th Cir. 1987) (citing cases) (characterizing this method of calculation as "the majority rule"), *superseded on other grounds by Rule*, *Fed. R. Civ. P. 15(c)*, *as recognized in*, *McGuire v. Turnbo*, 137 F.3d 321, 325–26 (1998). Mrs. Zander does not—and cannot—dispute that she did not file her Complaint until October 8, 2009. Therefore, if March 16 is the date of mailing under § 2401(b), Mrs. Zander's action is time-barred.

Mrs. Zander disputes that March 16 is the applicable mailing date. Mrs. Zander asserts that April 8, 2009 is the date on which the United States mailed "notice of final denial of the claim." To support this assertion, Mrs. Zander recounts the history of the United States' attempts to mail her notice of final denial of her claim. The United States mailed the March 16 letter to the address it had on file for Mrs. Zander: Ms. Bennett's Lincoln Parkway address. Subsequently, the letter was marked "returned to sender" and received hand-written instructions to forward it to

---

[3] The plain language of § 2401(b) seems to contradict the proposition that plaintiffs must file suit within six months of receiving notice of final denial of the claim where they have "presented [the claim] in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). FTCA's limitations provision is written disjunctively. Pertinently, it provides: "A tort claim . . . shall be forever barred unless it is presented . . . within two years after such claim accrues **or** unless action is begun within six months after the date of mailing . . . ." *Id.* (emphasis added). Notwithstanding this provision's plain meaning, it is well-settled that the failure to file suit within six months of administrative notice of final denial of the claim forever bars the action where, as here, the plaintiff files the administrative tort claim within two years after the claim's accrual. *See, e.g.*, *Houston v. United States Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987) (citing cases); *Willis v. United States*, 719 F.2d 608, 610–13 (2nd Cir. 1983); *Schuler v. United States*, 628 F.2d 199, 201–02 (D.C. Cir. 1980) (en banc); *Lynch v. U.S. Dep't of Army Corps of Eng'rs*, 474 F. Supp. 545, 548 (D. Md. 1979). In a smattering of unpublished opinions, the Fourth Circuit has embraced these holdings. *See Zeno v. United States*, No. 10–1056, 2011 WL 5023947, at *4 (4th Cir. Oct. 20, 2011); *Savage v. United States*, No. 91-2585, 1992 WL 122292, at *2 (4th Cir. June 8, 1992).

a different address. The letter was returned to the United States on March 30. On April 8, the United States redated the letter and mailed it to the forwarding address. Based on this sequence of events, Mrs. Zander concludes that April 8 constitutes the date of mailing of notice of final denial of the claim.

The United States' construction of § 2401(b) rests on solider ground. "[T]he starting point for interpreting a statute is the language of the statute itself." *Consum. Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (citations and internal quotation marks omitted). Dictionaries are a primary source of words' ordinary meaning. *See, e.g., Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1891 (2011). "[W]aivers of sovereign immunity are strictly construed and ambiguities in statutory language are construed in favor of immunity . . . ." *Flory v. United States*, 138 F.3d 157, 160 (5th Cir. 1998) (citing *Lane v. Pena*, 518 U.S. 187, 190–92 (1996)); *see also, e.g.*, *Pipkin v. U.S. Postal Serv.*, 951 F.2d 272, 275 (10th Cir. 1991) (citing cases).

A popular dictionary defines the verb "mail" straightforwardly. Merriam-Webster's Online Dictionary defines mail as "to send by mail." *Mail*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/mail (last visited Feb. 6, 2012). "Mail," in its relevant nominal sense, is defined as "a nation's postal system." *Mail*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/mail?show=1&t=1328550776 (last visited Feb. 6, 2012). "Send," for its part, has several entries, most of which coalesce around the concept of causing something to go forward. *See Send*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/send (last visited Feb. 6, 2012). So deconstructed, "date of mailing"

refers to the date on which the United States caused the final denial letter to go forward in the postal system.

At least two circuits have construed "date of mailing" consistent with its plain meaning. *Berti v. VA Hosp.*, 860 F.2d 338, 340 (9th Cir. 1988); *Carr v. Veterans Admin.*, 522 F.2d 1355, 1356 & n.1, 1357 (5th Cir. 1975). In *Berti*, the Ninth Circuit held that "the date of the initial mailing of a properly certified or registered letter begins the six-month statutory period" for § 2401(b) purposes. 860 F.2d at 340. The plaintiff argued that "only a mailing which the claimant actually receives constitutes a mailing that triggers the six-month statutory period under [§ 2401(b)]." *Id.* The *Berti* court rejected this argument "in the face of clear statutory language." The *Berti* court further reasoned that the plaintiff's "request would enlarge that consent to be sued which the Government, through Congress, has undertaken so carefully to limit." *Id.*; *see also Carr*, 522 F.2d at 1356 & n.1, 1357 (date of mailing was postmark date on back of envelope, not date on which plaintiff received letter; adherence to "plain words of the statute" "particularly necessary . . . because the waiver of sovereign immunity . . . must be strictly construed").

In this case, the United States caused the notice of final denial to go forward in the postal system on March 16. This fact is uncontested. Like the plaintiffs in *Berti* and *Carr*, Mrs. Zander cannot escape this clear statutory language. Consequently, the six-month time limit that § 2401(b) prescribes started to run on the day after this date and expired on September 16. Therefore, when Mrs. Zander filed suit more than three weeks later, her cause of action had earlier evaporated.

Similar to the plaintiffs in *Berti* and *Carr*, Mrs. Zander campaigns for a broad reading of § 2401(b). Yet, in contrast to asking the Court to expand § 2401(b)'s ambit to include actual

receipt of the notice, Mrs. Zander labels the United States' initial mailing as invalid. This is so because, in Mrs. Zander's words, the United States sent the March 16 letter to "Plaintiff's counsel's old address." Pl.'s Opp. 5, Doc. No. 36. Mrs. Zander further contends that the United States "took action to correct the error" on April 8. Therefore, Mrs. Zander concludes, April 8 is the date of mailing. To bolster her broad reading of § 2401(b), Mrs. Zander relies extensively on *Matos v. United States*, 380 F. Supp.2d 36 (D.P.R. 2005).

Mrs. Zander's attempt to spin the facts falls flat. The fundamental flaw in the notion that the United States sent the denial letter to her counsel's "old address" is that the United States had every reason to believe it was the correct address. As recounted above, *see supra* Part I, Ms. Bennett notified the United States that her address changed from 750 Hammond Drive to 1455 Lincoln Parkway during the administrative review process. Thereafter, the United States sent two mailings to the Lincoln Parkway address, to both of which Ms. Bennett responded. Ms. Bennett sent both responses from the Lincoln Parkway address, the second as late as July 18, 2009. In the second response, Ms. Bennett requested reconsideration of the United States' denial and asked for medical records. On July 30, the United States notified Ms. Bennett that it would consider additional medical evidence and returned the medical records that Ms. Bennett requested.

These facts lead inescapably to the conclusion that the United States had good reason to believe that Ms. Bennett was located at the Lincoln Parkway address when it mailed the March 16 final denial letter. Up to July 18, 2009, every indication was that Ms. Bennett was located at the Lincoln Parkway address. Furthermore, although Ms. Bennett did not contact the United States from the Lincoln Parkway address after that time, the record contains no indication that Ms. Bennett did not receive the July 30 mailing that included the medical records. Nor does the record reflect that Ms. Bennett notified the United States of her apparent address change.

Therefore, it is disingenuous to insist that the United States sent the notice of final denial to the wrong address; all signs pointed to its being the correct address.

Mrs. Zander's rosy gloss on *Matos* likewise rings hollow. In *Matos*, the court held that the United States' mailing of a denial letter does not start the statute of limitations in the following circumstances: the United States (1) has a PO Box and a physical address for the plaintiff's attorney's firm; (2) sends the denial letter to the physical address; (3) receives no confirmation that the denial letter was received; and (4) fails to resend the letter to the PO Box. 380 F. Supp.2d at 39–40. In this case, by contrast, the Lincoln Parkway address was the only address of record for Ms. Bennett when the United States sent the notice of final denial. Furthermore, dissimilar to *Matos*, the United States received confirmation that someone at the Lincoln Parkway address received the letter, promptly resending it to the forwarding address that that person left. Therefore, unlike in *Matos*, the United States' initial mailing of the denial letter was not "defective." To so conclude would be to contort the meaning of mailing under § 2401(b) to exclude otherwise valid mailings free from neglect or undue delay. Thus distorting § 2401(b)'s clear language runs counter to the mandate that courts must construe waivers of sovereign immunity strictly.

Mrs. Zander also argues from equity. In her opinion, dismissing the case as time-barred is unfair and pointless considering that she notified the United States of her medical malpractice claim in 2004 and the United States failed to notify her of its final denial of the claim for approximately half a decade. Further, the United States neglected to raise this argument as a ground for dismissal for almost two years after Mrs. Zander filed suit, during which time it moved to dismiss on a related ground. All told, the United States failed to argue that Mrs. Zander had to comply with § 2401(b) for nearly seven years since Mrs. Zander first notified it of her

malpractice claim. In view of these events, Mrs. Zander insists that dismissing the case would fail to fulfill the cardinal purposes of statutes of limitations: (1) notice to the defendant and (2) prevention of stale claims. *See, e.g.*, *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 349 (1944).

This equity argument does not survive scrutiny. The first flaw is that Mrs. Zander did not file suit until October 2009. Therefore, it is disingenuous to assert that the United States has failed to move to dismiss under § 2401(b) for nearly seven years. Second, even though the United States has already moved to dismiss on a separate limitations ground, the law does not preclude the United States from doing so again. It is well-established that § 2401(b)'s limitations period is jurisdictional and, hence, nonwaivable. *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990) (citing *Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir.)). Therefore, the six-month limitations period "may be raised by the parties at any stage of the litigation, or by the court on its own motion." *Kelly v. United States*, No. 92-2420, 1993 WL 321581, at *1 (4th Cir. Aug. 23, 1993) (citing *Barren ex rel. Barren v. United States*, 839 F.2d 987, 992 (3rd Cir.)). For these reasons, the United States did not waive its right to move to dismiss on § 2401(b) grounds for failing to do so when it moved to dismiss on the separate limitations ground. For similar reasons, it is immaterial that dismissing the action does not promise to promote the dual purpose of statutes of limitations.

Mrs. Zander's equity argument suffers from equally grave defects. To spin Jane Austen's memorable words, it is a truth universally acknowledged that she who comes into equity must come with clean hands. Yet, transgressing the spirit of this maxim, Mrs. Zander has prosecuted her medical malpractice claim in a manner lacking diligence.  First, Mrs. Zander waited for almost two years to file suit after she received her injury. Then, Ms. Bennett failed to notify the

United States of her address change even though she had notified the United States of an earlier address change, which indicates that she knew she had an obligation to give such notice. Next, when Ms. Bennett received the April 8 courtesy denial letter, Mrs. Zander waited all the way until October 8 to file suit. In other words, had Mrs. Zander waited just one more day, § 2401(b)'s six-month period would have expired. Therefore, although equitable tolling does not apply to § 2401(b), this case is a poor candidate for such relief. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.").

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the United States' Motion to Dismiss. A separate Order follows.

| | |
|---|---|
| February 9, 2012 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |